and Mr. Aguanaga. We will hear from you first. Thank you, Judge Wood, and may it please the court. Thank you, Judge Wood. I'm here to speak on behalf of Benjamin Aguanaga on behalf of Mr. Westray. The District Court believed that Mr. Westray raised and lost his sentencing claim in the State Trial Court. As the record on appeal now confirms, that belief was incorrect. If the court agrees with us on that point, then the only remaining question is what is the proper remedy for the District Court's error. As we say in the papers, if the court does nothing else, it should at least vacate and remand for the evidentiary hearing that Mr. Westray has repeatedly asked for and never received on this claim. But, given the unique facts of the case and the fact that some of counsel's most prejudicial errors are apparent from the face of the sentencing transcript, this court can go further and hold out right that Mr. Westray received ineffective assistance of counsel. So, Mr. Aguanaga, let me start you out with this question. We're all trying to focus on this motion, the amended motion, the motion to withdraw the guilty plea. And we can all agree, at least on the face of things, it offers two reasons to withdraw the guilty plea. The first, totally understandable that it wasn't knowingly and voluntarily made. That's the allegation. That's a reason somebody would withdraw a guilty plea. And then the second is the subject of some difference between you and the State about how we should characterize it, that he was denied the effective assistance of trial counsel because counsel failed to conduct a reasonable investigation into mitigation evidence and circumstances. Well, normally, from 10,000 feet up, you would see a complaint about failure to develop mitigation evidence as something relating to sentencing. But you must have some theory as to why it's relevant even to the question whether to enter a guilty plea. And I would like to hear it. Sure, Your Honor. So, I share your instinct that it's important to investigate mitigation evidence at the plea stage as opposed to the sentencing stage. I think what you have to take into account is the context in which amended motion counsel filed the motion. So, before he was appointed to represent Mr. Westray, Mr. Westray had filed his pro se state post-conviction petition, which did raise a mitigation argument. And I think, if I'm trying to channel amended motion counsel correctly, if you look at page six of the supporting memorandum that he filed in support of that motion, what he's trying to do is to say, well, if you look at the snapshot in time leading up to the moment that Mr. Westray entered his guilty plea, the question is whether that guilty plea was knowing and voluntary. And I would direct the court's attention to page six of that supporting memorandum. And this is docket entry 36-1 in the district court because there's one paragraph on that page, and that's the paragraph where amended motion counsel sums up what his theory of the motion to withdraw guilty plea is. And that's where he says, in sum, given, one, the fact that I had a misapprehension of the facts and law. This is this last page you're talking about. That's correct, Your Honor. It's one very long sentence. And the very first part of it says, given in part that I had this misapprehension of facts and law. And then he uses the word compounded by the fact that plea counsel did not adequately investigate mitigation evidence. And this is the substance of the sentence. He says, my guilty plea was not knowingly and voluntarily made and made with the effective assistance of counsel. So the theory is just that until you have a sense of the full picture of the prosecution's case, your ability intelligently to decide whether to plead guilty or not is impaired. Unconventional to be sure, Your Honor, but I think that was the theory that was put forward to the state trial court. I think the more important question, Your Honor, is just to distinguish what the state trial court had to decide in adjudicating that motion versus what the court on this claim will have to decide in adjudicating Mr. Westray's sentencing claim. Because I think that's most clear in terms of prejudice, right? In terms of the motion to withdraw guilty plea context, the prejudice question is, well, is there a reasonable probability that Mr. Westray would have not pleaded guilty and would have insisted on going to trial? The prejudice question here, of course, is entirely different. It's, is there a reasonable probability that but for counsel's unprofessional errors, he would have received a different sentence? Okay. I get that those are two importantly different questions. And just for a moment, maybe I'm jumping ahead in your argument. But another point that the state raises and that one, one would think from this record is at the time of the trial, Illinois still has a death penalty. And the jury is being asked, yes, death or no death? And as I understand the way the system worked, if the jury had come back saying no death, then the sentencing responsibility would have shifted over to the judge. And the judge, as I understand this case, would have had the choice of anything from 20 years on up to life imprisonment without parole. So is it your theory that the loss of the chance to get a lower sentence in terms of, terms of years is enough here? So enough in a couple of ways, Your Honor. I mean, this court has already held in Simpson and in Maddage that it's enough for justiciability purposes, right? So his claim is not moved because he can go back and potentially get a lower sentence. I mean, I think it's also enough in this context because what he's asking for is a chance to not only, one, have a different sentencer, which is not the jury, but the judge, but two, a chance to convince the judge to award something that is materially different than a life sentence. And Your Honor, in the background, I fully acknowledge are this court's decisions in Mertz and Richardson, and we lay out in the briefs the reasons why Griffin is the controlling opinion here. I mean, I think there's one point that's not in the briefs that I think the court should be aware of is that Mertz and Richardson were EDPA cases. They were cases where state courts had adjudicated claims on the merits, and so this court's analysis was governed by 2254 D1, and the question was whether those adjudications unreasonably applied clearly established federal law as determined by the Supreme Court. I think there's no dispute that the Supreme Court has not laid out the term of years rule that the state's advancing here and that Mertz and Richardson suggest should be the rule for prejudice in this unique context where you have a defendant who received a death sentence that was later commuted to life. So I think for that independent reason as well, Mertz and Richardson just can't be good law. We've laid out- Well, it's not that they're not good law. It's just that the question whether something is so far out of bounds that a court, a federal court in habeas review should overturn it isn't the same thing as asking, I mean, as we're repeatedly reminded, it's not the same thing as asking whether it was right. It's not the same thing as an underlying merits ruling. It's a deference ruling saying somewhere in the zone of possible outcomes lies this one. I think that's right, Judge Wood, and I think that's why this case is kind of unique because if you agree with us, there's no state court adjudication of the merits of his sentencing claim, then we're outside of the deference regime, right? We're under de novo review. Well, that's the only way you can get to E. That's the only way you can get to 2254E because if the state court, in fact, adjudicated your sentencing argument, then you're in D and you're in a world of trouble. That's correct, Your Honor, and that's why, I mean, we led with this argument in both the opening and the reply briefs, and especially because we think it's the right one. I mean, I think the state, you know, for obvious reasons took this position in state post-conviction proceedings, which is to say we know what his amended motion said and did not say, and so that's why we pressed heavily the evidentiary hearing point, and I think, you know, it's telling me, we briefly addressed this in the reply brief, that the state never addressed Mr. Westray's request for evidentiary hearings in the district court. We said he made the request twice. I realized in reading his reply in the district court, he made it a third time at the end of his reply brief in the district court, and you're completely right, Judge Wood, that if we are under D, we never get to E, and we never get to the evidentiary hearing point, but I think, you know, that's a huge if, and I think in this case, the record is extremely clear that whatever amended motion counsel intended by referring to ineffective assistance of counsel in the amended motion, it was not a claim about ineffective assistance at sentencing, and that's the claim, that's the only claim that Mr. Westray raised in his habeas petition and that we're raising here on appeal. Well, it's a big difference, frankly, because if he's still trying to withdraw his guilty plea, you know, he theoretically would wind up with a trial, he might be found guilty, he might not be found guilty. If he's just looking at his sentence, guilt is done, you know, and you're just talking about sentence. That's right, and I think that's where there's a night and day difference between what that amended motion asked for and what he asked for in his amended state post-conviction petition in here, which is, he's taken the guilty plea and his conviction as a given, and the only question now is whether his sentencing proceeding was fundamentally unfair in terms of Strickland. And I think the answer to that is yes, and you know, we can talk about performance and prejudice, performance in this case is, I don't really understand the state to seriously dispute it, I think the state does push back and say that if you look at his performance as a whole, you know, he did some effective cross-examination, he put three witnesses on the stand. Yeah, but let's talk about prejudice, because the state pushes this too. Some evidence of the abuse does come in at the sentencing stage. Granted, it's from him himself and his mother, you know, and whatever this other woman is doing is sort of, you know, it factors in how it factors in, but it's mainly from his mother and himself. And so it's not that the jury was unaware that there was an abuse problem out there, or at least an alleged abuse problem out there, although it was denigrated as the abuse excuse, I know. So why isn't that enough to show, again, for habeas purposes, that there can't be a finding of prejudice? Your Honor, I think the way I would frame it is to ask first, given the thin mitigation effort that plea counsel put forward, and I think nobody disputes three witnesses, 60 to 70 pages of sentencing. Well, pretty much zero effort, actually, if you look at some of the Supreme Court's decisions. I'm being terrible, Your Honor, but I completely agree. And I think, you know, given that state of affairs, I would ask the question, what was the most important thing for Mr. Westway's chances at the sentencing proceeding? And I think the answer has to be his credibility. He needed credibility in order to convey to the jury a sincere sense of his acceptance of responsibility. He also needed credibility to convey to the jury his account of the underlying crime. And if the court hasn't looked at the transcripts, I commend to you Keith Cook's testimony in the first stage of sentencing about what he said occurred at the bar that day versus what Mr. Westway testified to, because they're two materially different accounts. If you believe Keith Cook's account, Mr. Westway was the worst of the worst. It was his plan to shoot and kill the victim in this case. He shot first, and then Keith Cook shot first. That is exactly opposite of what Mr. Westway testified to. And I think this is where Beth Kern's testimony comes into play, because the way that the state prosecutor was able to tear down Mr. Westway's credibility is to say, look, jury, what does he have a talent for? He's an actor. He's in drama. He's, you know, an amazing actor. And he goes on in rebuttal to say, you know, if there's anything I disagree with Mr. Westway's, or I agree with Mr. Westway's counsel on, it's that he's talented. Unfortunately, that infected Mr. Westway's credibility, not just his acceptance of responsibility, but his credibility with respect to how culpable he was for the underlying crime. And counsel had not interviewed this witness prior to putting her on the stand. That's correct, Your Honor. And this court's decision, this court's had many decisions about where you put one or two witnesses on the stand, but this court has said, you know, go out and seek a witness to testify at the sentencing hearing. That's deficient performance. I mean, I think here, the fact that she offered to testify, he had not interviewed her, he had not prepared her, and look, and lo and behold, it was her testimony that was the subject of an extended back and forth in closing arguments. I mean, that's, I think, textbook deficient performance, and I think very plausibly prejudice in this case. If the court has no further questions, I'll reserve the balance of my time. That would be fine. Thank you. Mr. Levin. Thank you, Your Honor, counsel. May it please the court, I'm Eric Levin with the Office of the Illinois Attorney General. On behalf of the respondent, Warden Brookhart, there are two independent reasons why this court can affirm the district court's judgment denying habeas relief, and I'd like to talk about them both if I can today. The first is that under Section 2254D, the state trial court's decision rejecting petitioner's amended motion to withdraw his guilty plea adjudicated his present ineffective assistance of counsel claim on the merits, and it did so reasonably, which bars habeas relief. But I don't see how it could have done that unless there's some signal that the state court knew that it was adjudicating a sentencing claim, and I don't see that in the record. And it seems to me, as Mr. Aguanaga has argued, the question is quite different. You know, maybe he would lose on a sentencing claim, too. I don't know. But, you know, I don't see that it was presented to the state court, and if it wasn't presented to the state court, I've been spending the last two days immersed in Cullen against Penholster. You know, if it's not presented, then you're not in D. That's what E is for. Correct, Your Honor, but I think if we look at the amended motion itself, on its face, and I've looked it over numerous times. I'm sure it's been more than I have, probably. And it lays out two discreet reasons for withdrawing the guilty plea. Correct, correct, and he might not have asked for the right relief in state court, but that's a separate question of whether he presented the underlying claim. Why is that relevant, though? Because, I mean, it seems to me the state court very reasonably could have said, you know, we don't think an investigation into mitigation evidence is going to have an effect on a guilty plea. So we just don't find this terribly pertinent, and so it's another reason, you know, that he was also denied the opportunity to, you know, it's not relevant. So the state court easily could have thought mitigation evidence isn't part of the guilty plea process, and so we're just going to not bother with it. But I think when we're trying to look at this through the state trial court's vantage point, the amended motion laid out two distinct reasons. To withdraw the guilty plea. Well, yes, and the first one was that the plea was not knowing and voluntary. Correct. And that he was acting on a misapprehension of law and the facts. Yeah, this is all this accomplice liability stuff. Exactly, and that's what was focused on at the subsequent evidentiary hearing. But the second claim was that he was denied the effective assistance of trial counsel because trial counsel failed to conduct a reasonable investigation into mitigation evidence. Right. That is the quintessential way of formulating an ineffective assistance of sentencing counsel. But he doesn't, that's why my first question was why would this be pertinent to withdrawing a guilty plea? And I don't find it even hard to believe that before somebody pleads guilty that person wants to have a pretty good sense of how the trial is likely to go. What's the evidence I'm going to be faced with? Part of the reason to enter a guilty plea is to throw yourself on the court's mercy. You know, what else am I going to have? I just, I feel like the state is trying to amend this motion into something that it wasn't. Well, we don't dispute, and this is shown from the memorandum that was submitted in support of the motion, we don't dispute that his counsel at that stage did tie the two claims together. Right. There's no doubt about that. Well, I've been looking at that too. It's his final paragraph, the in conclusion dot dot dot. Well, and if you look at the second to last page of the memorandum, which has the stamp C-367 at the bottom, that's the one page where he actually discusses this ineffective assistance claim. And when he does so, I think two things are important. The first is that he relies on Petitioner's mother's affidavit, which had previously been submitted with Petitioner's pro se post-conviction petition. And it had been submitted with that post-conviction petition expressly in support of an ineffective assistance of sentencing counsel claim. The second thing that I think is important is he then cites... Why is that pertinent? I'm looking at this paragraph, but I don't see why telling the court where this has cropped up before she was advised by trial counsel. It's just kind of background to show that the defendant's attorney doesn't follow up and get the records. Well, but that's the same type of allegation and evidence that he's now relying on, admittedly in support of an ineffective assistance of counsel. So your theory basically is that wherever it crops up, any fact that somebody raises is relevant and shows the adjudication of any legal theory that you can think of. Well, I think, well, if I could just get out to the second point, which I think is important, is that he then cites two cases, one of which is an Eighth Circuit case and the other is an Illinois Supreme Court case, People v. Howrey. And if you take a look at that case, the relevant claim that I assume it's being cited for is the only reason it's relevant here is in that case, the Illinois Supreme Court adjudicated an ineffective assistance of sentencing counsel claim. Right, but let's look at the very last line of that page, talking about Thomas v. Lockhart. Defense counsel falls short of what a reasonably competent attorney would do if counsel fails to investigate mitigation evidence that would affect plea negotiations or sentencing. So the memorandum is linking the two, and since the motion just asks about a plea, I'm uncomfortable making it a motion about something else. Well, I would say, again, we agree that the memo— And this is not a theory the state has had all along, by the way. The state has bounced around on this. True. That is true, but I will note, even in the post-conviction proceedings, the state did take two different positions on that. Yeah, no, the state had been on and off and on and off, which is very hard for a litigant to keep his or her own story responsive to what the state is saying. It's true, but of course, the 2254D issue is something that this court must address on its own. Oh, absolutely, and I totally get it. If we find that this is enough somehow to present the sentencing issue to the state court at the time, then it's a D record. You don't get to an evidentiary hearing. That's what Cullen against Penholster says. If, however, the state court did not have before it the sentencing point, and the remand from the Illinois Supreme Court also suggests that the state court did not have the sentencing issue, then E opens up, and there's a diligence inquiry or other kinds of inquiries that we would need to look at. Well, I guess maybe I should switch points at this juncture, but I do think the court need not answer the D question here because, as we go on to explain in our brief, even under de novo review, and even accepting all of his allegations about unpresented mitigation evidence as true, in light of both the considerable aggravation evidence that was presented at the time, and the fact that he was in public imprisonment, he cannot show that he was prejudiced by any of the alleged errors that broking sentencing counsel may have committed. So here's my concern about your second point. I know there's been some inconsistency between what the Illinois Supreme Court thinks and what Simpson against Battaglia says, but the way the commutation worked is it just erased death from the sentence. So everybody was left with life imprisonment without parole, as I understand. But that's not what would have happened. If the mitigation evidence had been properly developed through witnesses other than oneself and one's mother, and it's pretty clear that disinterested witnesses are in a different category, and one juror had thought this is enough to vote no on death, it wouldn't have necessarily been life imprisonment without parole. He had a chance of anything from 20 years on up to life without parole, and we don't know what the trial judge would have done. So why not grant the writ and let the trial judge? He might wind up with the same sentence, but he might not. That's correct, and that is why the claim is not moot. But that doesn't mean, and this court has held in Mertz and Richardson, that doesn't mean that the commutation does not affect the merits. But we don't know what the state court would have done with the commutation, because the state court has never had that opportunity. The state court instead has found that he can't get there, and if that's wrong, if the failure to develop the mitigation evidence was ineffective assistance of counsel for sentencing purposes, then it seems to me the remedy would be, after you've got that all established, ask the state court. It might come back again. This happens all the time. It might come back again with the same sentence, but it might come back again with a 40-year sentence or something. But that's the case in any Strickland context, and in order to get that remedy, the petitioner has to show not just that his lawyer was deficient, but that there was prejudice in the sense that there was a reasonable— And I'm saying there is prejudice from the loss of an opportunity to get a lower sentence. Never happened. We don't know how the trial judge would have evaluated it. But that's not what the court said in Mertz and Richardson. The court said not just—obviously in Mertz and Richardson, there was the loss of the opportunity, but what the court said is that the petitioner has to show a reasonable probability that he would not have received a life sentence. He would have received something more favorable than a life sentence. Well, something—but a reasonable probability, as you know, is not more than 50 percent, whatever. You know, is our confidence undermined is sort of the question. Well, it is a substantial, as the court made clear in Harrington. Although it's not more than likely, the difference between it and a more than likely standard is not great. It does have to be a substantial likelihood of a different result. And here, there was considerable aggravation. Oh, it was a terrible—it was a terrible murder. There's no doubt about that. And I think it's important to note in that point as well, the co-defendant, Cook, who pleaded guilty and cooperated with the state, only received a life sentence, or received is in the record before the court. And both sides informed the court at that plea hearing that Cook had really no prior criminal history, I think, other than minor traffic violations. And it's the idea that— But we don't know if Cook had the same kind of background that Westray had. I mean, we just don't know with the state court how it would have processed all of this information if it had properly been before it. And certainly, the argument can be made that the aggravating evidence, the mitigation evidence that would have been presented, could have overcome the aggravation evidence in the sense of sparing Petitioner's life. And for all you know, it might have made the difference between a life sentence and a sentence that he would be finished serving when he's 80 years old, when presumably not a problem. But the Strickland Standard is not whether it might, but whether there's a reasonable probability, a substantial likelihood. Right. Which is the case in these mitigation situations, if it's ghastly enough. True. But I think now that the death penalty's off the table and he's serving a life sentence, the idea that there's a reasonable probability that the judge would have given him a lower sentence than Cook, despite his lengthy criminal history— With the full mitigation evidence in front of the judge. That's the jump that you're taking, that you think the judge would have attached zero weight to the mitigation evidence. And I don't know why we should think that. Well, but the only new mitigation evidence he cites is proposed testimony from his friend Flatt, who allegedly would have said that he saw Petitioner's father punch and knock him to the ground at least once. And then the— Right. Knox, exactly. Which is actually, maybe it wouldn't have just been the one-page summary from Knox. Knox could have been called, for all we know. There could have been a line of inquiry opened up, suggested by Knox. Well, I think there are two points there. One, calling Knox would have also opened the door to some additional aggravating evidence from Knox's report. And two, Knox's report, it's fairly evident from Knox's report that he's stating information that was given to him by Petitioner and Petitioner's mother. So, and those are the two witnesses. Those were the two witnesses best positioned to testify about Petitioner's stepfather's abuse. And those are the witnesses that Broeking called. But Knox, well, anyway. Before your time expires, going back to the first point with regard to paragraph two of the amended motion to withdraw, we focused a lot of time on the word mitigation. The word defendant. Is there anything in the record that gives color or meaning to that phrase, mitigation of evidence and circumstance, that places it in the area of criminal liability versus sentencing? Not that I can think of. I mean, there was no argument that perhaps he didn't lack the proper mental state or any type of competency issue. So I'm not sure what the reference to circumstances of Petitioner meant. Anything that connects it to what happened in the bar that day, as to something about his role in the offense? Well, I mean, that was the argument, that was the separate argument, which was that his plea was not knowing and voluntary, but he didn't properly understand the law and the facts. And the law was related to accountability and the facts were, you know, this dispute between who shot first. And so I suppose that maybe could be what he was talking about with circumstances there, that the memorandum doesn't even really flesh that out. But I do see that my time is up. I would just conclude by reiterating that we would ask the court to affirm the District Court's judgment for the two independent, for either of the two independent reasons we've set forth. Thank you. All right. Thank you very much, Mr. Levin. Anything further, Mr. Aguinaldo? Thank you, Judge Wood. Just a few brief points in rebuttal. The first is, on this question of what was adjudicated in the amended motion, I think the one sentence in Harrington v. Richter that's extremely important here is at page 98, where the court says that 2254D applies when a claim, not a component of one, is adjudicated. And so regardless of how you try to parse what facts or what legal theories were presented in supporting memorandum and in that amended motion, I think at the very least we can say that the sentencing claim, which is the entirety of the performance and prejudice arguments that we're presenting here, was not adjudicated in the state trial court. A couple of other responses in terms of the prejudice argument. Judge Wood, you asked a few questions about what we can assume or not assume in terms of what a state trial court might do in a new sentencing hearing. I think the proper way to frame this is not to focus, as the state does, just on the abuse evidence that Mr. Westray has identified. I think the ideal sentencing hearing that would occur on remand is one that is completely free of all of the other credibility issues that the plea counsel introduced by not preparing Beth Kern and putting her on the witness stand and then having her testify to talent in drama testimony that came back to bite them. I think you have to assume that a new sentencing hearing would not implicate the kind of abuse excuse or lack of taking responsibility charges that the state prosecutor levied against Mr. Westray. And the only other point on prejudice, Your Honor, I think is a good one. This court pointed out in Mertz that it took the jury only three hours to deliberate and return a death sentence. I think it's instructive here that the jury deliberated for over ten hours and they repeatedly came back to the state trial court with inquiries about their deliberations. I think that shows that at the very least one juror did not think that the state's aggravating evidence quite obviously mandated a death sentence for Mr. Westray. And so on remand in a new sentencing hearing that may agrees with that one juror who may have been a holdout. You know the court has made very clear that it's counsel's fundamental duty to conduct an investigation that presents the most powerful mitigation case possible. Plea counsel did not do that. He's entitled to another sentencing hearing. Thank you. All right. Thank you very much and thank you of course for accepting the appointment in this case. We appreciate your help to your client and the court. Thanks as well to the state. We will take this case under advisement.